FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHANIE SHARP; CYNTHIA MARTINEZ; PATRICIA SPEIGHT; LAURA VIRAMONTES GARCIA; REBECCA GAROUTTE; ANTHONY BAKER; SHARENE WAGONER; RUBY LOPEZ COLOCHO,<br>   *Plaintiffs-Appellants*,<br><br>v.<br><br>S&S ACTIVEWEAR, L.L.C.,<br>   *Defendant-Appellee*. | No. 21-17138<br><br>D.C. No.<br>3:20-cv-00654-MMD-CLB<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted February 9, 2023
San Francisco, California

Filed June 7, 2023

Before: M. Margaret McKeown, Jay S. Bybee, and Patrick J. Bumatay, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Employment Discrimination

The panel vacated the district court's dismissal, for failure to state a claim, of a Title VII sexual harassment claim against apparel maker S&S Activewear and remanded.

Eight former employees, seven women and one man, alleged that S&S permitted its managers and employees to routinely play "sexually graphic, violently misogynistic" music throughout its warehouse.

Aligning with the decisions of other circuits, the panel held that music with sexually derogatory and violent content, played constantly and publicly throughout the workplace, can foster a hostile or abusive environment and thus constitute discrimination because of sex. The panel disagreed with the district court's reasoning that the music's offensiveness to both men and women and audibility throughout the warehouse nullified any discriminatory potential. The panel vacated the district court's dismissal, with prejudice and without leave to amend, of plaintiffs' music-based claim and instructed the district court to reconsider, on remand, the sufficiency of plaintiffs' pleadings in light of two key principles: First, harassment, whether aural or visual, need not be directly targeted at a particular plaintiff in order to pollute a workplace and give rise to a Title VII claim. Second, the challenged conduct's offensiveness to multiple genders is not a certain bar to stating a Title VII claim.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# COUNSEL

Mark Mausert (argued) and Sean McDowell, Mark Mausert Law Office, Reno, Nevada, for Plaintiffs-Appellants.

Robert Cooper (argued), Wilson Elser Moskowitz Edelman & Dicker LLP, Los Angeles, California; Sheri Tome and Taylor A. Buono, Wilson Elser Moskowitz Edelman & Dicker LLP, Las Vegas, Nevada; for Defendant-Appellee.

Anne N. Occhialino (argued), Acting Assistant General Counsel; Phil M. Kovnat, Attorney, Appellate Litigation Services; Jennifer S. Goldstein, Associate General Counsel; Gwendolyn Young Reams, Acting General Counsel; Office of General Counsel, Equal Employment Opportunity Commission; Washington, D.C.; for Amicus Curiae Equal Employment Opportunity Commission.

# OPINION

McKEOWN, Circuit Judge:

In its landmark decision in *Meritor Savings Bank, FSB v. Vinson*, the Supreme Court first recognized sexual harassment as a violation of Title VII of the Civil Rights Act of 1964, which prohibits covered employers from discriminating against any individual because of sex. 477 U.S. 57, 64, 73 (1986); 42 U.S.C. § 2000e-2(a)(1). The Court held that a plaintiff may establish such a violation "by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor*, 477 U.S. at 66. This appeal calls on us to consider whether music with sexually derogatory and violent content, played constantly and publicly throughout the workplace, can foster a hostile or abusive environment and thus constitute discrimination because of sex.

The eight plaintiffs in this action (collectively, "Sharp") are former employees of apparel manufacturer S&S Activewear ("S&S"). Seven are women and one is a man. Sharp alleges that S&S permitted its managers and employees to routinely play "sexually graphic, violently misogynistic" music throughout its 700,000-square-foot warehouse in Reno, Nevada. According to Sharp, the songs' content denigrated women and used offensive terms like "hos" and "bitches." Songs like "Blowjob Betty" by Too $hort contained "very offensive" lyrics that "glorifie[d] prostitution." Likewise, "Stan" by Eminem described extreme violence against women, detailing a pregnant woman being stuffed into a car trunk and driven into water to be drowned.

Case: 21-17138, 06/07/2023, ID: 12730543, DktEntry: 47-1, Page 5 of 16
Case 3:20-cv-00654-MMD-CLB   Document 36   Filed 06/07/23   Page 5 of 16

Sharp v. S&S Activewear, L.L.C.                    5

Blasted from commercial-strength speakers placed throughout the warehouse, the music overpowered operational background noise and was nearly impossible to escape. Sometimes employees placed the speakers on forklifts and drove around the warehouse, making it more difficult to predict—let alone evade—the music's reach. In turn, the music allegedly served as a catalyst for abusive conduct by male employees, who frequently pantomimed sexually graphic gestures, yelled obscenities, made sexually explicit remarks, and openly shared pornographic videos. Although the music was particularly demeaning toward women, who comprised roughly half of the warehouse's workforce, some male employees also took offense. Despite "almost daily" complaints, S&S management defended the music as motivational and stood by its playing for nearly two years, until litigation loomed.

Sharp eventually filed suit, alleging that the music and related conduct created a hostile work environment in violation of Title VII. The district court granted S&S's motion to dismiss and denied leave to amend the music claim, reasoning that the music's offensiveness to both men and women and audibility throughout the warehouse nullified any discriminatory potential. The court countenanced S&S's argument that the fact that "both men and women were offended by the work environment" doomed Sharp's Title VII claim.

We disagree. In this preliminary posture, plaintiffs should have had their allegations taken as true or, at minimum, been granted leave to amend. We vacate the decision below and instruct the district court to reconsider the sufficiency of Sharp's pleadings in light of two key principles: First, harassment, whether aural or visual, need not be directly targeted at a particular plaintiff in order to

pollute a workplace and give rise to a Title VII claim. Second, the challenged conduct's offensiveness to multiple genders is not a certain bar to stating a Title VII claim. An employer's "status as a purported 'equal opportunity harasser' provides no escape hatch for liability." *Swinton v. Potomac Corp.*, 270 F.3d 794, 807 (9th Cir. 2001).

## I.     Procedural History

Sharp filed suit in federal district court after receiving right to sue letters from the Equal Employment Opportunity Commission ("EEOC"). Sharp claimed that the music and related conduct constituted sexual harassment under Title VII. In response, S&S filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). S&S argued that the challenged conduct did not constitute discrimination *because of sex* since both men and women were offended by, and all employees were exposed to, the music. Sharp defended the claim by emphasizing that offensiveness to men and women does not neutralize or invalidate discriminatory conduct. In the alternative, Sharp sought leave to amend.

The district court agreed with S&S and granted the motion to dismiss. The court held that Sharp failed to state an actionable Title VII claim because there was no allegation "that any employee or group of employees were targeted, or that one individual or group was subjected to treatment that another group was not." Because the music offended men and women alike, the district court reasoned, it could not be the basis of a sexual harassment claim. Deeming Sharp's music-based claim "fatally flawed," the district court dismissed it with prejudice and without leave to amend. The court did, however, grant Sharp leave to amend regarding the

"cursory allegations of other offensive conduct independent of the offensive music."

The court granted Sharp's Rule 54(b) motion for entry of judgment on the music-based claim. The court explained that the claims regarding conduct by male employees were "sufficiently factually dissimilar" to the music-based claim to merit separation on appeal. The issue on appeal is whether the district court erred as a matter of law in dismissing the music-based claim because the court did not view that claim as actionable since the music offended both female and male employees and the music did not target any specific employee or group of employees.

## II.  ANALYSIS

Core principles of employment discrimination law guide our analysis. To begin, a plaintiff bringing a hostile work environment claim must show discrimination by an employer on account of membership in a protected group under 42 U.S.C. § 2000e-2(a)(1). The offensive conduct must be "sufficiently severe or pervasive to alter the conditions of employment." *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020). Notably, individual targeting is not required to establish a Title VII violation. *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017). "It is enough," we have held, "if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,

Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).

Context matters. Workplace conduct is to be viewed cumulatively and contextually, rather than in isolation. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc). This approach makes common sense in order to screen out one-off, isolated events and yet benchmark conduct in the context of a specific workplace. Objectionable conduct is not "automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminat[ion]." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted). These parameters "prevent[] Title VII from expanding into a general civility code" for the American workplace. *Oncale*, 523 U.S. at 81. However, a boorish and generally hostile workplace does not shield against Title VII liability. The Supreme Court has made clear that it is no "defense for an employer to say it discriminates against both men and women because of sex." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020). "Instead of avoiding Title VII exposure, this employer doubles it." *Id.*

Applying these core principles, we conclude that the district court erred in rejecting Sharp's hostile work environment claim as incurable and legally deficient. More than offhand foul comments, the music at S&S allegedly infused the workplace with sexually demeaning and violent language, which may support a Title VII claim even if it offended men as well as women. Although we have not

before addressed the specific issue of music-as-harassment, this court and our sister circuits have recognized Title VII redress for other auditory offenses in the workplace and for derogatory conduct to which all employees are exposed. The EEOC, which filed an amicus curiae brief on behalf of Sharp, endorses this position. Emphasizing this appeal's impact on the future "ability of the EEOC and private parties to enforce Title VII," the agency agrees that "exposing employees to misogynistic and sexually graphic music can be discrimination because of sex, even where the employer exposes both women and men to the material and even though both women and men find the material offensive."

We review de novo the district court's dismissal for failure to state a claim and its denial of leave to amend where such denial rests upon futility grounds. *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021). At this early stage of litigation, our only task is to assess whether the allegations in Sharp's complaint, taken as true, state a plausible claim of sexual harassment. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). It is beyond our purview to pass judgment on the appropriateness of music in the workplace writ large. Nor is it our objective to ascribe misogyny to any particular musical genre. Our resolution is more modest: we conclude that the district court erred in dismissing Sharp's sex-based discrimination claim as "fatally flawed."

**A. Sexually Derogatory Music Audible Throughout the Workplace Can Create a Hostile Work Environment.**

A workplace saturated with sexually derogatory content can constitute harassment "because of sex." We have consistently sustained Title VII claims challenging a

Case: 21-17138, 06/07/2023, ID: 12730543, DktEntry: 47-1, Page 10 of 16
Case 3:20-cv-00654-MMD-CLB Document 36 Filed 06/07/23 Page 10 of 16

10            SHARP V. S&S ACTIVEWEAR, L.L.C.

workplace "polluted with insult and intimidation." *Reynaga*, 847 F.3d at 688; *see also Steiner*, 25 F.3d at 1463–64. "A raft of case law . . . establishes that the use of sexually degrading, gender-specific epithets, such as 'slut,' 'cunt,' 'whore,' and 'bitch,' . . . has been consistently held to constitute harassment based upon sex." *Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 229 (1st Cir. 2007) (internal quotation marks and citation omitted). Even if audible to all, lyrics loaded with such sexist slurs expose female employees to uniquely "disadvantageous terms or conditions of employment." *See Oncale*, 523 U.S. at 80 (quoting *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring)). Thus, the sort of "repeated and prolonged exposure to sexually foul and abusive music" that Sharp alleges falls within a broader category of actionable, auditory harassment that can pollute a workplace and violate Title VII.

Confirming this approach, EEOC guidelines broadly define "[h]arassment on the basis of sex" to include "verbal . . . conduct of a sexual nature" that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a). Although not binding, these guidelines "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor*, 477 U.S. at 65 (citations omitted).

Our conclusion aligns with the decisions of our sister circuits. In *Reeves v. C.H. Robinson Worldwide, Inc.*, an en banc panel of the Eleventh Circuit confronted the issue of music as a form of workplace harassment. The court held that a female employee challenging the radio programming played in her office could proceed to trial on her Title VII claim. 594 F.3d at 803–05. Reeves alleged that her male co-

workers fostered a sexually hostile environment through a number of behaviors, including routinely playing a "crude morning show" from a "central office radio" and "regularly [singing] songs about gender-derogatory topics." *Id.* at 803–04. Reeves's efforts to change the radio station, turn down the volume, or bring in her own radio to "drown out" the offensive sounds were all to no avail. *Id.* at 805–06. Concluding that there was sufficient evidence to present a jury question, the Eleventh Circuit stressed, "[W]ords and conduct that are sufficiently gender-specific and either severe or pervasive may state a claim of a hostile work environment, even if the words are not directed specifically at the plaintiff." *Id.* at 811. The court went on to explain that "a member of a protected group cannot be forced to endure pervasive, derogatory conduct and references that are gender-specific in the workplace, just because the workplace may be otherwise rife with generally indiscriminate vulgar conduct." *Id.* at 810.

The Eleventh Circuit's opinion in *Reeves* built on decisions from the Second, Fourth, and Sixth Circuits, which hold that sights and sounds that pervade the work environment may constitute sex discrimination under Title VII.[1] In *Petrosino v. Bell Atlantic*, the Second Circuit

---

[1] The Sixth and Tenth Circuits have also considered music-based allegations as a relevant factor in hostile work environment claims but ultimately decided the cases on other grounds. *See Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 678 (6th Cir. 2000) (discussing the persistent playing of "misogynistic rap music" as part of plaintiff's Title VII claim); *Lockard v. Pizza Hut*, 162 F.3d 1062, 1072 (10th Cir. 1998) (declining to reach whether a supervisor playing "the sexually explicit song 'Freak Me' on the jukebox" could carry a hostile work environment claim because plaintiffs' allegations of other offensive conduct were alone sufficient).

concluded that a jury could reasonably find sex discrimination where "sexually offensive comments and graffiti" were ubiquitous in the workplace. 385 F.3d 210, 222 (2d Cir. 2004). The court emphasized, "[t]he fact that much of this offensive material was not directed specifically at Petrosino—indeed, her male co-workers would likely have traded sexual insults every morning and defaced terminal boxes with sexual graffiti regardless of Petrosino's presence . . . —does not, as a matter of law, preclude a jury from finding that the conduct subjected Petrosino to a hostile work environment based on her sex." *Id.* Instead, the court held that a claim may survive when the conduct "was uniformly sexually demeaning and communicated the message that women as a group were available for sexual exploitation by men." *Id.*

Similarly, in *Ocheltree v. Scollon Productions, Inc.*, the Fourth Circuit held that male employees' "sex-laden and sexist talk and conduct" constituted sexual harassment of a company's sole female employee, even though "it could have been heard or seen by anyone present in the shop and was equally offensive to some of the men." 335 F.3d 325, 332 (4th Cir. 2003) (en banc) (cleaned up). While the music may be offensive to all, the Fourth Circuit held that a reasonable jury could find it "particularly offensive to women" and "intended to provoke [the plaintiff's] reaction as a woman." *Id.*

The Sixth Circuit in *Gallagher v. C.H. Robinson Worldwide, Inc.* rejected the shipping company's defense that employees' use of slurs like "bitches" and "whores" was "common and indiscriminate" and thus not discriminatory toward the female plaintiff. 567 F.3d 263, 270–71 (6th Cir. 2009). The court emphasized, "[t]he natural effect of exposure to such offensive conduct is embarrassment,

humiliation and degradation, irrespective of the harasser's motivation." *Id.* at 271. Thus, the court concluded, a work environment polluted with words or behaviors that are "explicitly sexual and patently degrading of women" can violate Title VII and so it was unnecessary to "*otherwise* show that the conduct evinces anti-female animus." *Id.* at 270–71.

We have applied parallel principles to hostile work environment claims premised on race discrimination. *See Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998) (noting that the same analytical standard applies to hostile workplace claims on the basis of race or sex). For instance, in *Woods v. Graphic Communications*, we deemed the workplace atmosphere "unquestionably polluted" where a Black plaintiff "was surrounded by racial hostility, and subjected directly to some of it." 925 F.2d 1195, 1202 (9th Cir. 1991). And, in *McGinest v. GTE Service Corp.*, we held that a Black plaintiff sufficiently alleged a hostile work environment based, in part, on hearing "racial insults" and seeing "racist graffiti . . . in the bathroom and on equipment." 360 F.3d 1103, 1114–16 (9th Cir. 2004). Importantly, "if racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff" and "a white worker[] was also targeted." *Id.* at 1117. In that case, we said that "racial animus" may "motivate[] a harasser" even if the offensive comments "were superficially directed" at the white worker. *Id.* at 1118.

Collectively, then, precedent from our own circuit and other courts of appeals guides us to recognize "sexually graphic, violently misogynistic" music as one form of harassment that can pollute a workplace and give rise to a Title VII claim. That all plaintiffs in these cases prevailed at

the summary judgment stage and beyond underscores the viability of such claims and the inappropriateness of the Rule 12(b)(6) dismissal here. Like Reeves, Sharp alleges persistent exposure to derogatory, gender-specific words broadcast throughout the workplace. Although the district court interpreted the "warehouse wide" playing of music as an indication of neutrality, this fact may better reflect the music's invidious pervasiveness. Because S&S's management was unreceptive to complaints, Sharp was forced to tolerate the music and the toxic environment as a condition of continued employment. And, even if the ubiquitous music was not (and need not have been) targeted toward any particular woman, female employees allegedly experienced the content in a unique and especially offensive way. Whether sung, shouted, or whispered, blasted over speakers or relayed face-to-face, sexist epithets can offend and may transform a workplace into a hostile environment that violates Title VII.

### B. Male and Female Plaintiffs Can Coexist in the Same Title VII Action.

In a pathbreaking case, the Supreme Court categorically held that "Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women." *Oncale*, 523 U.S. at 78 (alteration in original). As a practical matter, it should be no surprise that sexually charged conduct may simultaneously offend different genders in unique and meaningful ways. *See Steiner*, 25 F.3d at 1464 (while "words from a man to a man [may be] differently received than words from a man to a woman," harassing both men and women cannot "cure" bad conduct and "do[es] not rule out the possibility that *both* men and women . . . have viable claims against [their employer] for sexual harassment"). Thus, in general terms, a male employee may bring a hostile

work environment claim alongside female colleagues. In this case, because we do not reach the sufficiency of Sharp's allegations, we need not weigh the relative strength of the sole male plaintiff's claims. Instead, we conclude that the district court erred in holding that the coexistence of male and female plaintiffs dooms a hostile work environment claim.

S&S's arguments to the contrary hinge on an "equal opportunity harasser" defense that we simply do not countenance. An employer cannot find a safe haven by embracing intolerable, harassing conduct that pervades the workplace. Crediting such an approach would leave a gaping hole in Title VII's coverage. And, again, targeting a specific person is not a prerequisite for a viable claim under Title VII. "[O]ur case law is clear that the fact that an individual 'consistently abused men and women alike' provides no defense to an accusation of sexual harassment." *McGinest*, 360 F.3d at 1118 (quoting *Steiner*, 25 F.3d at 1463). In *Steiner v. Showboat Operating Co.*, we reviewed a casino's attempted invocation of this defense and concluded, "even if [the supervisor] used sexual epithets equal in intensity and in an equally degrading manner against male employees, he cannot thereby 'cure' his conduct toward women." 25 F.3d at 1464. And, importantly, we "d[id] not rule out the possibility that *both* men and women working at Showboat have viable claims against [the supervisor] for sexual harassment." *Id.*

It follows that an employer cannot evade liability by cultivating a workplace that is broadly hostile and offensive. As the Eleventh Circuit explained in *Reeves*, "Title VII does not offer boorish employers a free pass to discriminate against their employees specifically on account of gender just because they have tolerated pervasive but indiscriminate

profanity as well." 594 F.3d at 810. Concrete incidents of sex discrimination should not drown in a sea of incivility.

This same principle holds true in the context of race discrimination: We have held that a white coworker's "use of racially charged words to goad both black and white employees makes his conduct more outrageous, not less so." *McGinest*, 360 F.3d at 1118. And, in *Swinton v. Potomac Corp.*, we emphasized that the Black plaintiff was not "required to prove that white employees were not subject to similar harassment." 270 F.3d at 807. After all, allowing an employer to "escape liability because it equally harassed whites and blacks [or men and women] would give new meaning to equal opportunity." *Id*. Rather than embrace such an absurd interpretation, we resolve that the music's alleged offensiveness to both male and female employees is no obstacle to Sharp's suit.

### III. CONCLUSION

Heeding the core principles of sexual harassment law, we conclude that the district court improperly dismissed Sharp's music claim. We vacate the decision below and direct the district court to consider the sufficiency of the pleadings in the first instance in light of this opinion.

**VACATED and REMANDED.**